UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PROJECT SURVEILLANCE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-03324 |
| | § | |
| THE TRAVELERS INDEMNITY COMPANY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Project Surveillance, Inc. ("Project Surveillance") is a defendant in a wrongful death lawsuit brought in 2017 in the 333rd Judicial District of Harris County. *See Tejeda, et al. v. Project Surveillance, Inc., et al.*, Case No. 2017-67264 ("*Tejada* action"). At the time of the alleged wrongful death, Project Surveillance was covered by a Commercial General Liability ("CGL") policy issued by Travelers Indemnity Co. ("Travelers"). Project Surveillance sought to invoke the CGL policy to have Travelers defend the suit. Travelers concluded that the claims alleged in the *Tejada* action are covered by the CGL policy's professional services exclusion, and that Travelers therefore does not have a duty to defend Project Surveillance in that action.

Project Surveillance subsequently filed the instant breach of contract suit against Travelers, seeking a declaratory judgment that Travelers has a duty to defend Project Surveillance in the *Tejada* action. Before the Court is Travelers' Rule 12(b)(6) Motion to Dismiss. (Doc. 14). The Court determines that the motion should be granted.

### I. Background

On October 10, 2017, various plaintiffs sued Project Surveillance in the 333rd Judicial

District of Harris County, alleging that certain negligent acts on the part of the company caused the death of Mario Tejada Melchor, who was killed while working on a construction project. (Doc. 1-4 at 4). The operative complaint in the *Tejada* action states that "Defendant Project Surveillance was retained to provide safety supervision or other services for the project." (Doc. 1-4 at 3-4). The *Tejada* Plaintiffs allege that Project Surveillance was negligent in virtue of:

> 1. Failing to inspect or adequately inspect the project;
> 
> 2. Failing to warn or adequately and timely warn;
> 
> 3. Failing to assure that the project was being conducted in a safe manner;
> 
> 4. Failing to verify that sloping, shoring, or a trench box was being provided as necessary;
> 
> 5. Failing to report or require sloping or adequate sloping, shoring or adequate shoring, or a trench box for the trenching or excavation operation; or
> 
> 6. Failing to stop work when adequate sloping, adequate shoring, or a trench box was not being used for the trenching or excavation operation.

(Doc. 1-4 at 4).

At the time of Mr. Tejada Melchor's death, Project Surveillance was insured by both RLI Insurance Company ("RLI") and Travelers. (Doc. 1, ¶ 20). RLI is Project Surveillance's professional liability insurer, while Travelers is Project Surveillance's commercial general liability insurer. (Doc. 1, ¶1). RLI agreed to defend Project Surveillance in the *Tejada* action pursuant to a reservation of rights. (Doc. 1, ¶2). Travelers declined to defend Project Surveillance in the *Tejada* action based on the professional services exclusion in the CGL policy. (Doc. 1-1).

The professional services exception of the CGL provides:

**EXCLUSION—ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY**
This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
**PROVISIONS**

1. The following is added to Paragraph **2. Exclusions,** of SECTION 1- COVERAGES- COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

    **Professional Services**

    "Bodily injury" or "property damage" arising out of the rendering or failure to render any "professional services".

    [. . . .]

3. The following is added to **DEFINITIONS** section:

    "Professional services" means any service requiring specialized skill or training, including:

    a. Preparation, approval, provision of or failure to prepare, approve, or provide any map, shop drawing, opinion, report, survey, field order, change order, design, drawing, specification, recommendation, warning, permit application, payment request, manual or instruction;
    b. Supervision, inspection, quality control, architectural, engineering or surveying activity or service, job site safety, construction contracting, construction administration, construction management, computer consulting or design, software development or programming service, or selection of a contractor or subcontractor; or
    c. Monitoring, testing, or sampling service necessary to perform any of the services described in Paragraph **a.** or **b**.

(Doc. 14-1 at 114).

On September 4, 2019, Project Surveillance filed suit against Travelers in this Court, seeking a declaratory judgment that Travelers has a duty to defend and indemnify Project Surveillance in the *Tejada* action. (Doc. 1). Travelers moves to dismiss the complaint, pursuant to FRCP 12(b)(6), on the grounds that "every single allegation against Project Surveillance constitutes an excluded professional service under the Travelers policy." (Doc. 14 at 12).

**II.     Legal Standard**

A complaint withstands a Rule 12(b)(6) motion to dismiss where it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Review is generally limited to allegations in the complaint, which are accepted as true and viewed in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*,

509 F.3d 673, 675 (5th Cir. 2007). But a court may consider documents attached to the complaint, or documents that are referenced in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

Under Texas law, an insured's duty to defend is governed by the "eight-corners rule," which requires a court to look only to the terms of the policy and the underlying pleadings. *See GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). "[I]f the four corners of the petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, resolving all doubts in favor of the insured, the insurer has a duty to defend. If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend." *Northfield Ins. Co. v. Loving Home Care*, Inc., 363 F.3d 523, 531 (5th Cir. 2004). Courts should "resolve all doubts regarding the duty to defend in favor of the duty and . . . construe the pleadings liberally." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (internal citations omitted).

**III.     Analysis**

The CGL policy defines "professional service" as "any service requiring specialized skill or training," including those services enumerated in the policy. (Doc. 14-1 at 114). *See Witkin Design Grp., Inc. v. Travelers Prop. Cas. Co. of Am.*, 712 F. App'x 894, 896–97 (11th Cir. 2017) (concluding that the same professional service exclusion "applies to any service requiring specialized skill or training, such as the services listed above").

The *Tejada* complaint alleges that Project Surveillance was retained to provide "safety supervision or other services for the project." (Doc. 1-4 at 3-4). Safety supervision qualifies as a professional service for purposes of the CGL exceptions because it requires specialized skill or

training. In fact, the CGL policy lists, as examples of professional services, numerous supervision-related activities, including "failure to prepare . . . any warning," "supervision," "inspection," "control," "surveying activity or service," "job site safety," "construction administration," and "monitoring . . . necessary to perform and of [those] services." (Doc. 14-1 at 114). Project Surveillance does not dispute that safety supervision is a professional service.

Instead, Project Surveillance argues that "the vague allegation that Project Surveillance provided 'other services' precludes application of the exclusion." (Doc. 22 at 18). The CGL's professional services exception does not extend to acts of ordinary negligence arising out of non-professional services. *See Gore Design*, 538 F.3d at 372 (A professional services exclusion "does not preclude a duty to defend where the petition alleges both negligent professional services and negligent services of another nature"). Project Surveillance argues that it is impossible to determine whether the *Tejada* allegations "relate to 'professional services' or some 'other services' rendered by Project Surveillance," and that, accordingly, Travelers has a duty to defend because "there is, potentially, a case under the complaint within the coverage of the policy." *Zurich*, 268 S.W.3d at 491.

The *Tejada* allegations do not, however, potentially support a covered claim. The *Tejada* pleadings list six specific allegations of negligence. Even when those allegations are construed liberally, there is no escaping the conclusion that all six allege acts, or omissions, arising out of the provision, or the failure to provide, safety supervision, which is a covered professional service. The allegations describe failures "to inspect . . . the project", "to warn . . . ", "to assure . . . [safety]", "to verify . . . ", "to report or require . . . ", and "to stop work when adequate . . . ". This language, which is very similar, at least in substance, to the examples given in the CGL exclusion, clearly

brings each allegation within the scope of the policy's professional services exception.

### IV. Conclusion

Defendant's Motion to Dismiss (Doc. 14) is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, this the 21st day of January 2020.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE